**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

WESTFIELD INSURANCE COMPANY,

                Plaintiff,

v.                                    CIVIL ACTION NO.   2:16-cv-00822

RICHARD DAVIS, et al.,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Plaintiff Westfield Insurance Company's ("Westfield") Motion for Summary Judgment (ECF No. 33) and Richard and Sandra Davis's ("Davis Defendants") Motion to Dismiss (ECF No. 13).[1]   For the reasons stated herein, the Court **GRANTS** the Motion for Summary Judgment and **DENIES** the Motion to Dismiss.

### I.      *BACKGROUND*

Westfield brings this Declaratory action against the Davis Defendants, and Joey A. Roy and Jacqueline Blankenship ("Roy and Blankenship"), seeking to establish that it has no obligation to defend or indemnify the Davis Defendants pursuant to their Homeowners Policy with Westfield.

---

[1] It is not clear whether the Davis Defendants intended this filing as a Motion to Dismiss, as it is merely a page attached to their Answer that states "[t]he Davis' move the Court to deny granting of declaratory judgment for Westfield Insurance Company that provides insurance for the Davis'."   This appears to the Court as a component of the Answer, rather than a separate motion, but to the extent that it asks for dismissal, it does not provide any grounds, and is thus **DENIED**.

A. *Factual Background*

Many of the operative facts in this case are derived from state court pleadings and are thus undisputed.   This action arises out of a complaint brought by Roy and Blankenship in the Circuit Court of Lincoln County, West Virginia.   (Exhibit A, ECF No. 33-1 at 1-6.)   According to the complaint, in July and August of 2012, the Davis Defendants harvested timber, without permission, from land co-owned by Roy and Blankenship.   (*Id.* at 2, ¶¶ 5-6.)   The Davis Defendants' timbering was performed by Dale Parsons d/b/a Parsons Logging, pursuant to a business agreement whereby the Davis Defendants and Parsons would split the proceeds from the sale of the timber.   (Exhibit B, ECF No. 33-1 at 12-13.)   The complaint alleges that the Davis Defendants continued timbering on Roy and Blankenship's land after being warned to stop. (Exhibit A, ECF No. 33-1 at 2, ¶¶ 7-8.)   Roy and Blankenship filed a Petition for a temporary restraining order against the Davis Defendants, which was granted on August 13, 2012.   (*Id.* at 2, ¶¶ 9-10.)   On April 25, 2014, Roy and Blankenship filed their state court complaint, seeking a declaratory judgment separating their property from that of the Davis Defendants, damages for violations of W. Va. Code § 61-3-48(a), negligence, and trespass, and punitive damages based on the allegation that the Davis Defendants' conduct was purposeful.   (*Id.* at 3-6.)

At the time of the Davis Defendants' timbering, they were insured under a Homeowners Policy with Westfield Insurance, with a coverage period of September 10, 2011 to September 10, 2012.   (Exhibit C, ECF No. 33-1 at 14.)   The Davis Defendants requested that, pursuant to that policy, Westfield defend and indemnify them in the suit Roy and Blankenship filed against them. (ECF No. 1, ¶ 23.)

*B.  Insurance Policy*

The Davis Defendants' Homeowners Policy provides, in relevant part:

## DEFINITIONS

**B.** In addition, certain words and phrases are defined as follows:

*\*\*\**

3.    ***Business*** means:

    **a.**    A trade, profession or occupation in which a person is engaged in on a full-time, part time or occasional basis with or without compensation, except volunteer activities for which that person receives no compensation other than payment for expenses incurred; or

    **b.**    Any other activity in which a person is engaged in for money or other compensation, except the following:

        **(1)**    One or more activities, not described in (2) through (4) below, for which that person receives no more than $2,000 in total gross compensation for the 12 months before the inception date of the policy;

        **(2)**    Volunteer activities for which that person receives no compensation other than payment for expenses incurred to perform the activity;

        **(3)**    Providing home day care services for which that person receives no compensation other than the mutual exchange of services; or

        **(4)**    The rendering of home day care services to a relative of the insured.

*\*\*\**

5.    ***Insured*** means:

    **a.**    You and residents of your household who are:

        **(1)**    Your relatives; or

        **(2)**    Other persons under the age of 21 and in the care of any person named above.

*\*\*\**

8.    ***Occurrence*** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

    **a.**    ***Bodily injury;*** or

    **b.**    ***Property damage***.

9.    ***Property damage*** means physical injury to, destruction of, or loss of use of tangible property.

*\*\*\**

## SECTION II – LIABILITY COVERAGES

**A.     Coverage E - Personal Liability**

If a claim is made or a suit is brought against an ***insured*** for damages because of ***bodily injury*** or ***property damage*** caused by an ***occurrence*** to which this coverage applies, we will:

**1.**     Pay up to our limit of liability for the damages for which an ***insured*** is legally liable. Damages include prejudgment interest awarded against an ***insured***; and

**2.**     Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false, or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for the ***occurrence*** has been exhausted by payment of a judgment or settlement.

\*\*\*

## SECTION II – EXCLUSIONS

\*\*\*

**E.     Coverage E - Personal Liability and Coverage F - Medical Payments to Others**

Coverage **E** and **F** do not apply to the following:

**1.     Expected or Intended Injury**

***Bodily injury*** or ***property damage*** which is expected or intended by an ***insured*** even if the resulting ***bodily injury*** or ***property damage***:

**a.**     Is of a different kind, quality or degree than initially expected or intended; or

**b.**     Is sustained by a different person, entity, real or personal property, than initially expected or intended.

However, this exclusion **E.1.** does not apply to ***bodily injury*** resulting from the use of reasonable force by an ***insured*** to protect persons or property.

**2.     "Business"**

**a.**     ***Bodily injury*** or ***property damage*** arising out of or in connection with a ***business*** conducted from an ***insured location*** or engaged in by an ***insured***, whether or not the ***business*** is owned or operated by an ***insured*** or employs an ***insured***.

This exclusion **E.2.** applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed or implied to be provided because of the nature of the business.

(Exhibit C, ECF No. 33-1 at 29-30, 45-48).

4

### C.  Procedural Background

Westfield filed the instant action on January 26, 2016, seeking a declaratory judgment that the Davis Defendants' policy does not provide coverage for the claims asserted by Roy and Blankenship, and thus that Westfield has no duty to defend or indemnify the Davis Defendants in connection with those claims.  (ECF No. 1 at 8, a-b.)  Westfield, an Ohio corporation with its principal place of business in Ohio, cited complete diversity and an amount in controversy over $75,000 as the basis for jurisdiction.  (*Id.* ¶ 6.)  Given that the Davis Defendants and Roy are citizens of West Virginia and Blankenship is a citizen of Florida, and that the amount in controversy appears to be claimed in good faith, the requirements of 28 U.S.C. § 1332 are satisfied. Westfield filed this motion for summary judgment and memorandum in support on August 11, 2016.  Though the Davis Defendants did not file a response, Defendants Roy and Blankenship responded on August 25, 2016, and Westfield filed its reply memorandum on September 1, 2016. The motion is fully briefed and ripe for adjudication.

## II.     STANDARD OF REVIEW

Summary judgment is proper where the pleadings, depositions, and affidavits in the record show that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."   Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).   If there exist factual issues that properly can be resolved only by a trier of fact because they may reasonably be determined in favor of either party, summary judgment is inappropriate. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986); *see also Pulliam Inv. Co., Inc. v. Cameo Props*., 810 F.2d 1282, 1286 (4th Cir. 1987).   The moving party bears the burden of showing that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law.

*Celotex Corp.*, 477 U.S. at 322–23.   Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of her case and does not make, after adequate time for discovery, a showing sufficient to establish that element.   *Id.*   The nonmoving party may not avoid summary judgment "by submitting an affidavit that conflicts with earlier deposition testimony."   *Alba v. Merrill Lynch & Co.*, 198 F. App'x 288, 300 (4th Cir. 2006) (citing *Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984)).   When determining whether there is an issue for trial, the Court must view all evidence in the light most favorable to the nonmoving party. *Mellen v. Brunting*, 327 F.3d 355, 363 (4th Cir. 2003).   The nonmoving party may not rest on the pleadings alone and must show that specific material facts exist by offering more than a mere "scintilla of evidence" in support of his position.   *Anderson*, 477 U.S. at 252.

### III.   DISCUSSION

Westfield's Motion for Summary Judgment offers two grounds on which it could be granted: (1) the timbering incidents alleged by Roy and Blankenship in the underlying state court litigation are not "occurrences" as defined in the Davis Defendants' policy, so coverage is unavailable; and (2) even if the timbering incidents are "occurrences" under the policy, these occurrences would be excluded from coverage under with the "intentional acts" exclusion or the "business" exclusion.   Roy and Blankenship's Response opposes both grounds, and also argues that Westfield has waived its right to deny coverage.

In this declaratory judgment action where jurisdiction is based on diversity of citizenship, interpretation of the insurance policy at issue is governed by West Virginia law.   *First Fin. Ins. Co. v. Crossroads Lounge*, 140 F. Supp. 2d 686, 694 (S.D. W. Va. 2001).   As the Fourth Circuit has stated:

Because we are sitting in diversity, our role is to apply the governing state law, or, if necessary, predict how the state's highest court would rule on an unsettled issue. *See Private Mortg. Inv. Servs., Inc. v. Hotel & Club Assocs., Inc.*, 296 F.3d 308, 312 (4th Cir. 2002). Accordingly, where there is West Virginia law addressing a particular question, we will follow it. But if the West Virginia courts have not addressed an issue, we will look to generally accepted principles of insurance law, because we believe that West Virginia's Supreme Court of Appeals would adopt those principles as its own.

*Horace Mann Ins. Co. v. Gen. Star Nat'l. Ins. Co.*, 514 F.3d 327, 329 (4th Cir. 2008).

    A.  *Insurability*

As set out above, an "occurrence" under the Davis Defendants' policy is "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Westfield contends that Roy and Blankenship's state court complaint against the Davis Defendants does not allege an "occurrence" that would trigger coverage, based on the argument that the timbering incidents were not "accidents" as that word is used in the policy.   (ECF No. 34 at 8-9.) Roy and Blankenship argue that the Davis Defendants did not intend to timber on land they did not own, and as a result their alleged timbering on Roy and Blankenship's land was an "accident." (ECF No. 36 at 10-12.)   Westfield contends that for the purposes of determining whether any of the timbering constituted an "accident," it is irrelevant whether the Davis Defendants did not intend to cut timber belonging to Roy and Blankenship, because the actual acts of cutting down the trees were intentional acts.   (ECF No. 37 at 4-5.)   Simply stated, the parties disagree on whether, under West Virginia law, an "accident" includes intentional acts done based on a mistake of fact. Because the facts material to this issue are not in dispute, the existence of coverage is an issue of law to be determined by the Court.

The term "accident" is not defined in the Davis Defendants' Homeowners Policy.   Under West Virginia law, "[l]anguage in an insurance policy should be given its plain, ordinary

meaning." Syl. Pt. 1, *Soliva v. Shand, Morahan & Co.*, 345 S.E.2d 33 (W. Va. 1986). In addressing the meaning of "accident" where it is not defined in a policy, the Supreme Court of Appeals of West Virginia ("WVSCA") recently noted that "[t]he common and everyday meaning of 'accident' is a chance event or event arising from unknown causes." *W. Va. Fire & Cas. Co. v. Stanley*, 602 S.E.2d 483, 492 (W. Va. 2004). Under West Virginia law, when determining whether an incident was an "accident," "primary consideration, relevance, and weight should ordinarily be given to the perspective or standpoint of the insured whose coverage under the policy is at issue." Syl. Pt. 1, *Columbia Cas. Co. v. Westfield Ins. Co.*, 617 S.E.2d 797 (W. Va. 2005) (finding that from the perspective of the County Commission that held the policy, the suicides of inmates were "accidents" and thus "occurrences" under the policy).

West Virginia law is less clear on the specific issue of whether an intentional act committed based on a mistake of fact can be an accident. While considering the definition of "accident" in a policy where it was not defined, the WVSCA quoted from a Washington State Court of Appeals case that explained "'an accident is never present when a deliberate act is performed unless some additional unexpected, independent and unforeseen happening occurs which produces the damage. To be an accident, both the means and the result must be unforeseen, involuntary, unexpected, and unusual.'" *State Bancorp, Inc. v. U.S. Fid. & Guar. Ins. Co.*, 483 S.E.2d 228, 234 (W. Va. 1997) (quoting *Harrison Plumbing & Heating, Inc. v. New Hampshire Ins. Grp.*, 681 P.2d 875, 878 (Wash. Ct. App. 1984)). This language has since been cited as controlling West Virginia law regarding the existence of accidents. *See Westfield Ins. Co. v. Pinnacle Grp., LLC*, 137 F. Supp. 3d 912, 919 (S.D. W. Va. 2015) (finding that debt collection activities were not "accidents," even if they were not intended to be illegal, because the means were intentional acts, and "both the

8

means and the result must be unforeseen for the event to be considered an accident"). In interpreting policy language materially identical to the language in the instant case, the WVSCA also recently held that there is no occurrence "where the injury or damage is allegedly caused by the homeowner's conduct in knowingly permitting an underage adult to consume alcoholic beverages on the homeowner's property." Syl. Pt. 2, *Am. Modern Home Ins. Co. v. Corra*, 671 S.E.2d 802 (W. Va. 2008). This was based in part on the reasoning that "it is obvious that where a homeowner engages in conduct knowingly, that conduct clearly cannot be said to be unexpected and unforeseen from the perspective of the homeowner." *Corra*, 671 S.E.2d at 806.

While the WVSCA has not directly considered whether an intentional act done based on a mistake of fact can be an "accident" under an insurance policy, the courts that have considered the issue are split in their conclusions.[2] Given the apparent approval of the "both the means and the result must be unforeseen, involuntary, unexpected" language defining the term "accident," and the WVSCA's focus on the intentional nature of the act, rather than the result, at issue in *Corra*, this Court finds that the WVSCA would adopt the view that an intentional act, performed as intended, is not an "accident" because it is done based on a mistake of fact.[3] In the instant case,

---

[2] *Compare Mindis Metals, Inc. v. Transp. Ins. Co.*, 209 F.3d 1296, 1299-300 (11th Cir. 2000) (finding no accident under Georgia law where a company bought and scrapped railcars without knowledge that the seller had no authority to sell and did not convey good title), *Red Ball Leasing, Inc. v. Hartford Acc. & Indem. Co.*, 915 F.2d 306, 30 (7th Cir. 1990) (finding no accident under Indiana law where a repossession company took trucks it mistakenly believed it had a right to repossess), *M. R. Thomason, Contractor v. U. S. Fid. & Guar. Co.*, 248 F.2d 417, 418-19 (5th Cir. 1957) (finding no accident under Alabama law where bulldozer operator drove onto the wrong lot on a mistaken belief it was part of the lot he was supposed to be dozing), *and Argonaut Sw. Ins. Co. v. Maupin*, 500 S.W.2d 633, 635 (Tex. 1973) (finding no accident where party intentionally trespassed and removed material from property under the mistaken belief they had a right to do so), *with York Indus. Ctr., Inc. v. Michigan Mut. Liab. Co.*, 155 S.E.2d 501, 505-06 (N.C. 1967) (finding an intentional acts exclusion did not apply where bulldozer operator cleared neighboring land based on an inaccurate belief it was part of the parcel he meant to clear), *State v. Glens Falls Ins. Co.*, 404 A.2d 101, 104 (Vt. 1979) (finding an "occurrence" where sheriff levied the wrong property based on a mistake of ownership), *and Erie Ins. Exch. v. Sipos*, 64 Va. Cir. 55 (2004) (finding an "accident" where contractor removed property from an apartment and disposed of it under the mistaken belief that it was debris).

[3] Roy and Blankenship's argument that this Court should adopt the reasoning of the Court of Appeal of Louisiana is unpersuasive. In the relevant case, the Louisiana court reversed the trial court's grant of summary judgment in a

the Davis Defendants hired Parsons to timber trees, and that is what he did.   Roy and Blankenship do not argue that the timbering process was done negligently, just that it was done on the wrong property.

Roy and Blankenship argue that because their state court complaint includes a claim for negligence, there is an accident alleged.   (ECF No. 36 at 12.)   Roy and Blankenship cite a dictionary definition of negligence and argue that a claim of negligence "cannot be intentional and therefore should be an 'accident' under the policy."   (*Id.*)   However, as Westfield notes in its Reply, under West Virginia law, merely alleging negligence in the complaint to describe intentional actions cannot "alter the essence of the claim for purposes of determining the availability of insurance coverage."   *Smith v. Animal Urgent Care, Inc.*, 542 S.E.2d 827, 832 (W. Va. 2000); *see also Stanley*, 602 S.E.2d at 497 (finding that allegations clearly describing intentional conduct were "excluded from coverage by the definition of 'accident.'").

Though Roy and Blankenship's complaint includes a negligence count, it is supported only by a bare allegation that asserts "The Defendants' actions and inactions constitute negligence." (Exhibit A, ECF No. 33-1 at 3, ¶ 16.)   The factual allegations in the complaint belie the use of the negligence heading; that section of the complaint asserts "Defendants harvested timber from the Plaintiffs' property without the Plaintiffs' permission" and that "Plaintiffs' . . . warned the Defendants to cease and desist," but "Defendants failed to heed these warnings and continued to

---

factually similar scenario because it found that there were issues of fact regarding whether the timbering at issue was an "occurrence."   *Pender v. Elmore*, 855 So. 2d 930, 936-37 (La. Ct. App. 2003).   Louisiana law is distinguishable in this area, however, because in determining whether an act is an accident, courts there must weigh whether "the perpetrator desires the results of his action or he believes that the results are substantially certain to occur."   *Great Am. Ins. Co. v. Gaspard*, 608 So. 2d 981, 985 (La. 1992).   *Pender* is further distinguishable, as Westfield points out, because the policy in that case contained a specific endorsement for the accidental overcutting of timber across a property line.   *See Pender*, 855 So. 2d at 935.

harvest timber from the Plaintiffs' property."   (*Id.* at 2, ¶ 6-8.)   These allegations clearly refer to intentional conduct, and Roy and Blankenship's inclusion of a negligence count cannot alter their nature to bring them under the policy's coverage.

The Court concludes that the Davis Defendants' policy does not provide coverage for the claims asserted by Roy and Blankenship, because no "occurrence" is alleged in Roy and Blankenship's state court complaint.

### B.  *Business Exclusion*

Even assuming Roy and Blankenship's complaint alleges an "occurrence" under the Davis Defendants' policy that does not trigger the "Expected or Intended Injury" exclusion,[4] this occurrence would be excluded under the "Business" exclusion.   This exclusion precludes coverage for "property damage arising out of or in connection with a business . . . engaged in by an insured, whether or not the business is owned or operated by an insured or employs an insured." As provided above, the definition of "Business" in the Davis Defendants' policy includes "[a] trade, profession or occupation in which a person is engaged in on a full-time, part time or occasional basis with or without compensation."   In interpreting a policy with a similar definition of "business,"[5] the WVSCA reviewed dictionary definitions of "business," "trade," "profession," and "occupation," as well as a number of cases from other jurisdictions addressing business exclusions, and determined that in the context of an exclusionary clause, "business pursuits" means "continuous or regular activity engaged in by the insured for the purpose of earning a profit or

---

[4] In interpreting similar policies, the WVSCA has recognized that "accident" language limiting coverage is the equivalent of an intentional acts exclusion.   *See Stanley*, 602 S.E.2d at 493; *Dotts v. Taressa J.A.*, 390 S.E.2d 568, 570-71 (W. Va. 1990).   Accordingly, the Court sees no reason to analyze the "Expected or Intended Injury" exclusion separately.

[5] The policy at issue in that case defined "business" as "a trade, profession or occupation, including farming, and the use of any premises or residence premises for any such purpose."

livelihood."   Syl. Pt. 2, *Camden Fire Ins. Ass'n v. Johnson*, 294 S.E.2d 116, 117 (W. Va. 1982).

Though the Davis Defendants' policy simply uses the term "business," rather than "business

pursuits," and specifically provides that activities done on a "part time or occasional basis" can

qualify as "business," this interpretation is otherwise relevant.

       Under this interpretation, the logging venture between the Davis Defendants and Parsons

was a "business" because it was motivated by profit.   Richard Davis testified that the Davis

Defendants decided to timber their land because "we needed the money."   (Exhibit B, ECF No.

33-1 at 12.)   Mr. Davis explained that in their arrangement, "[Parsons] would take the logs to

market, and then he would bring us the paper showing us what he received for those and then we

would settle up from there."   (*Id.*)   Though he could not remember the exact percentages, Mr.

Davis confirmed that the Davis Defendants and Parsons split the proceeds from each logging sale.

(*Id.* at 13.)

       Roy and Blankenship argue that the Davis Defendants were not "engaged" in the logging

business.   The Davis Defendants' policy does not define "engage," but Black's Law Dictionary

defines it as "to employ or involve oneself; to take part in; to embark on."   *Engage*, Black's Law

Dictionary (10th ed. 2014).   Roy and Blankenship attempt to distinguish the Davis Defendants'

involvement in the logging by saying they "simply ask[ed] someone to perform work on their

property," and argue that application of the business exclusion in this context would also operate

to exclude damages caused by routine work done on a homeowner's property.   (ECF No. 36 at

15-16.)   As Plaintiff notes in its Reply, the logging at issue here is distinguishable from hiring

someone to do repairs on a home, in that the Davis Defendants' received a share of the profits from

the logging.   (ECF No. 37 at 7.)   As discussed above, the Davis Defendants initiated the logging

venture and took a percentage of the sales revenue; they clearly took part in the business to a sufficient extent to be "engaged."

Accordingly, the Court finds that even if Roy and Blankenship alleged an "occurrence" that was not excluded by the "Expected or Intended Injury" exclusion, such occurrence would be excluded from coverage by the "Business" exclusion.

### C. Duty to Defend

Westfield also contends that it has no duty to defend the Davis Defendants in the underlying state court litigation.   Defendants Roy and Blankenship correctly point out that under West Virginia law, the duty to defend the insured is "generally broader than the obligation to provide coverage."   *Horace Mann Ins. Co. v. Leeber*, 376 S.E.2d 581, 584 (W. Va. 1988).   In determining whether this duty exists, West Virginia Courts consider "whether the allegations in the plaintiff's complaint are reasonably susceptible of an interpretation that the claim may be covered by the terms of the insurance policy."   *Aetna Cas. & Sur. Co. v. Pitrolo,* 342 S.E.2d 156, 160 (W. Va. 1986).   As discussed above, Roy and Blankenship's claims against the Davis Defendants are for intentional acts in furtherance of a business; because these alleged acts do not fit the definition of "occurrences" as set out in the policy, and because they fit under the "Business" exclusion, the allegations are not "reasonably susceptible" to coverage under the policy.   Accordingly, the Court concludes that Westfield has no duty to defend the Davis Defendants in state court.

### D. Waiver

Roy and Blankenship also argue that Westfield waived its right to deny coverage.   (ECF No. 36 at 16.)   In West Virginia, "to establish waiver there must be evidence demonstrating that a party has intentionally relinquished a known right."   *Potesta v. U.S. Fid. & Guar. Co.*, 504

S.E.2d 135, 142 (W. Va. 1998).   "Waiver can be established by express conduct or impliedly, through inconsistent actions."   *Ara v. Erie Ins. Co.*, 387 S.E.2d 320, 323 (W. Va. 1989).   The party advocating implied waiver has the burden of proving, by "clear and convincing evidence . . . that the insurer intentionally and knowingly waived" the reason for denying coverage.   Syl. Pt. 3, *Potesta*, 504 S.E.2d. 136.   However, waiver is limited by the WVSCA's holding that "[g]enerally, the principles of waiver and estoppel are inoperable to extend insurance coverage beyond the terms of an insurance contract."   Syl. Pt. 5, *Potesta*, 504 S.E.2d 136.   While certain exceptions apply to this rule in the context of estoppel, the WVSCA strictly construed the bounds of implied waiver, holding that "while implied waiver may be employed to prohibit an insurer, who has previously denied coverage on specific ground(s), from subsequently asserting a technical ground for declination of coverages, implied waiver may not be utilized to prohibit the insurer's subsequent denial based on the nonexistence of coverage."   Syl. Pt. 6, *Potesta*, 504 S.E.2d 136; *see also Bailes v. Erie Ins. Prop. & Cas. Co.*, No. CIV.A. 3:09-0146, 2010 WL 358768, at *8 (S.D. W. Va. Jan. 25, 2010), *aff'd,* 436 F. App'x 249 (4th Cir. 2011) (finding based on *Potesta* that an insurer did not waive its right to argue an exclusion to coverage by not raising the exclusion prior to the relevant litigation, because it was arguing coverage did not exist).

Roy and Blankenship argue that Westfield has waived the right to deny coverage by participating in the underlying state litigation without notifying the Davis Defendants of their intent to contest coverage.   (ECF No. 36 at 17.)   They argue that waiver can be inferred from the fact that Westfield participated in the mediation of the underlying state action over a year ago, but only recently filed this declaratory action.   (*Id.*)   They also claim that Westfield only informed the Davis Defendants of its intent to contest coverage through a reservation of rights

14

letter after Roy and Blankenship requested it in discovery.   (*Id.*)   Roy and Blankenship do not contend that Westfield committed express waiver.

Though Westfield addresses this argument in its Reply, their assertions are unnecessary to evaluate, because Roy and Blankenship are arguing that Westfield committed implied waiver. Waiver cannot "extend insurance coverage beyond the terms of an insurance contract," and Westfield contends that the terms of Davis Defendants' policy do not provide coverage.   Since Westfield is denying coverage based on the "nonexistence of coverage," the doctrine of implied waiver is inapplicable.    Accordingly, the Court concludes that Westfield did not waive its right to deny coverage.

### IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Westfield's Motion for Summary Judgment (ECF No. 33) and **DENIES** the Davis Defendants' Motion to Dismiss (ECF No. 13). Accordingly, the Court **GRANTS** Westfield's request for declaratory relief.   Accordingly, this case is **DISMISSED** and retired from the docket of this Court.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented party.

ENTER:        February 7, 2017

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE

15